IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL ATWOOD,

                    Plaintiff,

      v.

OREGON DEPARTMENT OF
TRANSPORTATION, an Agency of the State of
Oregon, MICHAEL A. SPAETH, and MARK
SEE,

                    Defendants.

CV-06-1726-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Michael Atwoods, brings this action against his employer, Oregon Department

of Transportation ("ODOT"), and two of his former supervisors, Michael A. Spaeth ("Spaeth")

and Mark See ("See"), alleging religious discrimination in violation 42 USC § 1983, Title VII of

the Civil Rights Act of 1991, 42 USC § 2000e *et seq*, and ORS 659A.030(b); disability

discrimination  in violation of the Americans with Disabilities Act, 42 USC § 12112 ("ADA"),

and ORS 659A.112; violations of the Family and Medical Leave Act, 29 USC § 2615(a)(1)

("FMLA"), and Oregon Family Leave Act, ORS § 659A.153 ("OFLA"); workers compensation

discrimination in violation of ORS 659A.040; and common law claims for the intentional and

reckless infliction of emotional distress.

This court has subject matter jurisdiction over the federal law claims under 28 USC

§ 1331 and supplemental jurisdiction over the state law claims under 28 USC § 1367. All parties

have consented to allow a Magistrate Judge to enter final orders and judgment in this case in

accordance with FRCP 73 and 28 USC § 636(c).

Defendants have filed a partial motion for summary judgment (docket # 36). For the

reasons set forth below, that motion is GRANTED IN PART and DENIED IN PART.

## **STANDARDS**

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any

material fact and "the moving party is entitled to judgment as a matter of law." The moving

party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317,

323 (1986). Once the moving party does so, the nonmoving party must "go beyond the

pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing

FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but

only [determine] whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F3d

1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is

'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material

fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert*

*denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F2d 626, 630 (9th Cir 1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Id* (citation omitted).

## DISCUSSION

### I. Violation of § 1983 (First Claim)

#### A. Violation of Freedom of Religion (Count 1) as to See

See seeks summary judgment against Count One of the First Claim alleging a violation of Atwoods' freedom of religion in violation of § 1983. Atwood concedes See's motion. Thus, See is granted summary judgment against Count 1 of the First Claim.

#### B. Statute of Limitations (Count 2)

Count 2 of the First Claim alleges a denial of equal protection on the basis of disability. Based on the statute of limitations, Spaeth and See seek summary judgment against Count 2 for any events that occurred after November 30, 2004. Atwood filed his § 1983 claim on November 30, 2006. In Oregon, § 1983 claims are governed by the two year statute of limitations in ORS 12.110. *Wilson v. Garcia*, 471 US 261, 275 (1985); *Sain v. City of Bend*, 309 F3d 1134, 1139 (9th Cir 2002). Therefore, defendants contend that events prior to November 30, 2004, are time barred.

In response, Atwood relies on the continuing violation theory applicable to § 1983 claims based on a "series of related acts," citing *Gutowsky v. County of Placer*, 108 F3d 256, 259 (9th Cir 1997), *cert denied*, 522 US 914 (1997). However, in 2002 the Supreme Court invalidated the "related acts" method of establishing a continuing violation, stating that "discrete discriminatory

acts are not actionable if time barred, even when they are related to acts alleged in timely filed

charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 US 101, 113 (2002).  Although *Morgan* was a Title

VII case, the Ninth Circuit has extended its ruling to § 1983 claims.  *Carpinteria Valley Farms,*

*Ltd. v. County of Santa Barbara*, 344 F3d 822, 829 (9th Cir 2003).

    Although defendants' acts which form the basis of this claim may be related, they are

discrete acts, each of which allegedly violated Atwood's constitutional rights.  Consequently, they

do not qualify as a continuing violation, and Spaeth and See are granted summary judgment

against Count 2 as to liability for events which occurred prior to November 30, 2004, including:

(1)  the alleged January 2001 incident when Atwood crawled across the parking lot because of his

undiagnosed Hepatitis C condition; (2) the 2001-03 poor performance evaluations; (3) the

October 12, 2001 denial of his medical leave that related to this Hepatitis C condition; and (4) the

alleged failure to accommodate his physical limitations during the summer of 2004 as a result of

his July 13, 2004 back injury.

    While time-barred acts may not be considered for purposes of liability, evidence of time-

barred acts may be considered to prove timely claims.  "[T]he statute [does not] bar an employee

from using the prior acts as background evidence in support of a timely claim."  *Morgan*, 536 US

at 113.  Accordingly, evidence of events prior to November 30, 2004, may, in the court's

discretion, be admitted at trial as background evidence in support of Atwood's timely claims.

///

///

///

4 - OPINION AND ORDER

C.    **Qualified Immunity as to Spaeth and See (Counts 1 and 2)**

Based on qualified immunity, Spaeth and See seek summary judgment against Counts 1 and 2 alleging violations of freedom of religion and equal protection.  The doctrine of qualified immunity protects government officials from civil suits arising from their discretionary functions, when their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 US 800, 818 (1982).  The defense of qualified immunity involves two inquiries:  (1) whether "'[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right;'" and, if a violation of a constitutional right could indeed be found, (2) "whether the violated right was clearly established."  *Long v. City and County of Honolulu* 511 F3d 901, 906  (9th Cir 2007), quoting *Saucier v. Katz*, 533 US 194, 201 (2001).  A right is clearly established if "a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 US 635, 640 (1987).

1.    **Count 1**

Count I alleges that Spaeth violated Atwood's freedom of religion under the First and Fourteenth Amendments during a meeting on December 30, 2004, when Spaeth questioned Atwood about his unavailability to work on Sunday.  Spaeth called Atwood into the meeting with no warning.  He denied Atwood's request for union representation.  When Atwood persisted in that request, Spaeth came with three inches of Atwood's face and ordered him to sit down.  When asked why he no longer able to work on Sunday, Atwood indicated it was because of his religious beliefs.  Spaeth told Atwood that he needed the know the name of the church and the pastor, as well as the meeting time.  When Atwood refused to answer, Spaeth told him that working

overtime was a condition of employment and that "if you do not make yourself available on Sundays . . . it can lead to your dismissal." Atwood Depo., pp. 101-02. This was only two days after Spaeth had disciplined Atwood regarding his medical leave. Because he felt threatened, Atwood waited by the telephone on Sundays for a couple of weeks, but did not record his time or request compensation. Atwood has since been questioned on multiple occasions regarding his religion and church attendance.

The starting point for analyzing such a claim in the government employment context is under the framework established for Title VII claims. *Lawson v. Washington*, 296 F3d 799, 806 (9th Cir 2002) (summary judgment properly granted on a § 1983 religious accommodation claim where plaintiff could not establish a *prima facie* case of religious discrimination under Title VII); *see also Floyd v. State of Mo. Dep't of Soc. Servs., Div. of Family Servs.*, 188 F3d 932, 936 (8th Cir 1999). However, the First Amendment may afford Atwood greater protection than Title VII. *See Brown v. Polk County, Iowa*, 61 F3d 650, 654 (8th Cir 1995), *cert denied*, 516 US 1158 (1996) ("With specific reference to the free exercise clause, we hold that in the governmental employment context, the first amendment protects at least as much religious activity as Title VII does."); *see also Johnson v. Transp. Agency, Santa Clara County, Cal.*, 480 US 616, 627, n6 (1987) ("The fact that a public employer must also satisfy the Constitution does not negate the fact that the statutory prohibition [in Title VII] with which that employer must contend was not intended to extend as far as that of the Constitution."). Thus, while a violation of Title VII in this context is also a constitutional violation, conduct which is not actionable under Title VII may still form the basis of a viable § 1983 claim.

A Title VII religious accommodation claim requires an employee to prove that: (1) he had a *bona fide* religious belief, the practice of which conflicted with his employment duties; (2) he informed his employer of his beliefs and the conflict; and (3) the employer threatened him or subjected him to discriminatory treatment. *Lawson*, 296 F3d at 804, citing *Heller v. EBB Auto Co.*, 8 F3d 1433, 1438 (9th Cir 1993). Viewing the evidence most favorably to Atwood, these elements are satisfied. Atwood informed his employer of his religious belief that made him unavailable to work on Sunday and, as a result, was denied union representation and threatened.

Spaeth contends that he was not conducting an investigation for which Atwood was entitled to union representation and simply posed isolated questions to understand whether a conflict existed between Atwood's *bona fide* religious practices and employment duties. He characterizes this questioning as necessary in order to take the "initial step to reasonably accommodate the religious belief." *Am. Postal Workers Union v. Postmaster Gen.*, 781 F2d 772, 776 (9th Cir 1986). However, Sunday was not a scheduled work day, and there was no business need for Atwood to work on Sundays.

A factfinder could reasonably conclude that Spaeth's conduct at the December 30, 2004, meeting was not neutral and accommodating, but instead was intimidating and threatening. This is bolstered by evidence that other employees who said that they were not available to work were not called into similar meetings. Although Atwood was not disciplined by Spaeth, he felt sufficiently threatened to wait by his telephone to be called to work on Sundays.

The purpose of qualified immunity is to protect government officials who have a reasonable, good faith basis for their actions, given their everyday, common sense understanding of the law. To suggest that a public employee could openly threaten and discriminate on the basis

of religion, but be excused because he did not understand the exact parameters of a lawful investigation, would make qualified immunity more a sword than a shield. Accordingly, Spaeth is not entitled to qualified immunity on Count 1 as to Atwood's constitutional right to religious accommodation.

Count 1 also alleges that Spaeth violated Atwood's freedom of religion "by retaliating against [him] for requesting that he not work on the day that he attends church." First Amended Complaint, ¶ 27. Again turning to Title VII for guidance, an employee can establish a Title VII retaliation claim by showing that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F3d 1234, 1240 (9th Cir 2000). Although Atwood engaged in a protected activity by requesting Sundays off, there is no evidence that he suffered any adverse employment action as a result.

Count 1 further alleges that Spaeth violated Atwood's freedom of religion "by creating a hostile work environment for [him] because of his religion." First Amended Complaint, ¶ 27. It is not clear whether the First Amendment encompasses a hostile work environment claim. Assuming it does, then again borrowing from Title VII, an employee must prove: (1) he was subjected to verbal or physical conduct on the basis of a protected characteristic; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Vasquez v. County of Los Angeles,* 349 F3d 634, 642 (9th Cir 2003) (race and sex). As discussed below for Count 3 of the Second Claim (Title VII), the evidence is insufficient to prove a hostile work environment solely on the basis of religion.

2.      **Count 2**

Count 2 alleges that Spaeth and See violated Atwood's equal protection rights by treating him "differently than similarly situated non-disabled employees . . . with regards to his work assignments and overtime assignments" and disciplinary action. First Amended Complaint, ¶ 32. Atwood premises this claim on being the only employee:  (1) called in for questioning regarding his unavailability to work Sundays (December 30, 2004); (2) whose time cards were whited out, photocopied and filled out by management (through 2003); (3) followed around with a tape recorder at work (August 2004); (4) who received a letter of concern regarding the way he filled out his time cards (December 28, 2004); and (5) whose personnel records were destroyed (partially burned) when he filed a tort claims notice (June 21, 2005).  However, as discussed above, this claim can be premised only those events occurring after November 30, 2004, which eliminates the second and third acts.

Being disabled is not a protected class.  Under the Equal Protection Clause, "state action distinguishing between the disabled and nondisabled is constitutional so long as 'there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 US 312, 320 (1993); *see also Bd. of Trustees v. Univ. of Ala. v. Garrett*, 531 US 356, 367 (2001) ("States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational.").  The "burden is upon the challenging party to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Garrett*, 531 US at 367, quoting *Heller*, 509 US at 320.  Thus, Atwood must show that ODOT had no rational basis for

distinguishing between him and other individuals because of his disability due to Hepatitis C.[1] The record reveals that ODOT had such a rational basis.

With respect to questioning Atwood about his unavailability to work on Sundays, Spaeth had a rational basis to ascertain that the unavailability was premised on a *bona fide* religious belief. While Spaeth's questioning may have violated Atwood's freedom of religion, as discussed above, there is no evidence that it violated any equal protection right based on Atwood's disability.

In the letter of concern, Spaeth complains that despite the "detailed training" Atwood had received on "proper documentation guidelines and how to correctly fill out" his daily time card, there "continue to be errors and inaccuracies involving [Atwood's] documentation records." Linder Decl, Ex. 8. The letter also states that he had "observed no change in [Atwood's] behavior to improve and follow instructions as given by the staff available to help you with the appropriate payroll coding." *Id*. The letter proposes no disciplinary action, but was intended "to help [Atwood] understand [Spaeth's] expectations as to what is required from [him] as an ODOT employee." *Id*. If Spaeth had a rational basis to believe that Atwood's time cards were inaccurate, then he had a rational basis for addressing this performance issue with a letter of concern. Atwood does not deny that he used the wrong code for a SAIF related matter, but contends that he did not know the correct code. However, Spaeth believed that Atwood had received training in that regard. Given this record, the letter of concern had a rational basis.

With respect to the burning of records, Atwood has submitted evidence that on the day of his retirement, Steve Larkins (crew coordinator of Humbug crew) burned documents in a burn

---

[1] Defendants do not contest that Hepatitis C is a disability. Therefore, for purposes of these motions, this court will assume that Atwood is disabled.

barrel pursuant to an instruction by See.  A co-worker saw Atwood's time card on top which Atwood recovered before it was destroyed.  ODOT has a policy regarding destruction of documents which requires shredding.  The record does not reveal whether the burned documents included only Atwood's time cards or included other employees' time cards, or included only old or duplicate documents whose destruction would otherwise be authorized under ODOT's document destruction policy.  Although it is not a standard practice to burn employee records, there is no evidence that the burning of such records this one time caused any prejudice to Atwood.  Absent such evidence, Atwood cannot prove that See lacked a rational basis to order destruction of the records.

Therefore, Atwood fails to show that Spaeth and See violated his constitutional right to equal protection, entitling Spaeth and See to qualified immunity.  As a result, summary judgment is granted against Count 2 of the First Claim.

### D.     "Class of One" Equal Protection Violation (Count 3)

Count 3 alleges that Spaeth and See "intentionally treated [him] differently from other similarly situated employees."  First Amended Complaint, ¶ 36.  Atwood concedes that in the Ninth Circuit, this "class of one" theory of equal protection "is inapplicable to decisions made by public employers with regard to their employees."  *Engquist v. Oregon Dep't of Agriculture*, 478 F3d 985, 996 (9th Cir 2007), *cert granted*, 76 USLW 3199 (Jan. 11, 2008).  However, he urges this court to disagree with *Engquist* and allow his claim to proceed based on the recent granting of *certiorari* by the United States Supreme Court.  This court declines that invitation.  Unless and until *Engquist* is overruled by the United States Supreme Court, it remains the controlling law

within the Ninth Circuit.  Thus, Spaeth and See are entitled to summary judgment against Count 3

of the First Claim.

## II.    <u>Title VII Discrimination (Second Claim)</u>

ODOT seeks summary judgment against Count 3 of the Second Claim which alleges that

Atwood suffered a hostile work environment due to his religion in violation of Title VII.  Title

VII makes it unlawful for an employer "to discharge any individual . . . because of such

individual''s . . . religion."  42 USC § 2000e-2(a)(1).  "Religion" includes all aspects of religious

observance and practice, as well as belief, unless an employer demonstrates that it is unable to

reasonably accommodate an employee's religious needs without undue hardship on the conduct

of the employer's business.  42 USC § 2000e(j).  Hostile work environment claims are "composed

of a series of separate acts that collectively constitute one unlawful employment practice."

*Morgan*, 536 US at 117.  As discussed above, to prevail on this claim, Atwood must show that:

(1) he was subjected to verbal or physical conduct on the basis of a protected characteristic; (2)

the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the

conditions of his employment and create an abusive work environment.  *Vasquez*, 349 F3d at 642.


The environment must be "both objectively and subjectively offensive, one that a

reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be

so."  *Farragher v. City of Boca Raton,* 524 US 775, 787 (1998), citing *Harris v. Forklift Sys.,*

*Inc.*, 510 US 17, 21-22 (1993).  Whether the work environment is sufficiently hostile or abusive

depends on "all the circumstances," including "the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and

12 - OPINION AND ORDER

whether it unreasonably interferes with an employee's work performance." *Harris*, 510 US at 23.

This claim is premised primarily on Spaeth's December 30, 2004, meeting with Atwood and the vague assertion that he continued to be questioned about his religion and church attendance after this meeting. Although Spaeth's conduct at the meeting may be characterized as intimidating and threatening, this was only one incident and was not sufficiently severe or pervasive to establish an abusive work environment. *See Ovchinikov v. Oak Valley Auto Sales & Leasing, Inc.*, 2004 WL 2889771, *5 (D Or Dec. 13, 2004) (granting summary judgment against a hostile work environment claim based on one comment regarding "filing in Russian" combined with the allegedly religiously-motivated decision not to grant one of two requested days off). Furthermore, in the absence of other evidence, a vague claim that he continued to be questioned fails to create a triable issue of fact.

Thus, ODOT is granted summary judgment against Count 3 of the Second Claim.

## III.   **FMLA Violation (Third Claim)**

Based on the statute of limitations, ODOT moves for summary judgment on both counts of the Third Claim alleging FMLA violations.

The FMLA allows two general types of claims. First, it is unlawful for a covered employer "to interfere with, restrain or deny the exercise of . . . any right" provided under the FMLA. 29 USC § 2615(a)(1) ("interference claim"). Second, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. 29 USC § 2615(a)(2) ("retaliation claim"). A FMLA claim must be brought "not later than 2 years after the date of the last event constituting the alleged violation

for which the action is brought."  29 USC § 2617(c)(1).  The FMLA extends this deadline to three

years for willful violations.  29 USC § 2617(c)(2).

ODOT argues that the FMLA claim is barred to the extent that it relies on acts outside of

the two-year period set forth in 29 USC § 2617(c)(1) because Atwood does not plead a willful

violation of FMLA.  According to ODOT, all facts relevant to Atwood's FMLA claim fall outside

of this period, thus barring the entire FMLA claim.  Alternatively, it argues that even if the

pleadings could be construed to state a willful violation, none of the evidence suffices to create a

genuine issue of fact that such a violation occurred.

As noted above, Atwood brought suit on November 30, 2006.  Thus, applying the two

year statute of limitations, Atwood's FMLA claim must be based upon conduct that occurred on

or after November 30, 2004.  As a result, the following allegations cannot form the basis of

Atwood's FMLA claim:  (1) the October 12, 2001 denial of his request for leave, related to his

Hepatitis C condition; (2) the December 15, 2003 denial of his request for leave related to his

wife's pregnancy; (3) the January 9, 2004 letter of concern regarding his voice message to Karla

Newman in Human Resources and the meeting in which he received it; and (4) the alleged

attempt by Dennis O'Connor (Atwood's supervisor in Warrenton) to tape record him in August

2004.

Atwood responds first by arguing that the facts support a finding of willfulness, allowing

him to take advantage of the three-year statute of limitations under 29 USC § 2617(c)(2).  It is not

certain at this juncture whether the facts do support a finding of willfulness.  If they do, then this

court will grant Atwood leave to amend his complaint to conform to the evidence.[2]  Absent leave

to amend, Atwood may not submit evidence of actions taken outside of the two year statute of

limitation in support of his FMLA claim.

Second, Atwood relies on additional and more recent allegations to support his FMLA

claim:  (1) in mid-December 2004, he was denied leave to take medication after volunteering for

a non-mandatory overtime shift;  (2) on December 28, 2004 he was issued a letter of concern for

the way he coded mandatory doctors' appointments on his timecard;  (3) throughout 2004 and

2005 ODOT continued to lose his medical leave paperwork and denied him medical leave; and

(4) on June 21, 2005, some of his time records referencing his medical leave were found partially

burned in a burn barrel.

However, none of these allegations, including those which fall before the two year statute

of limitations, suffice to state a retaliation claim under 29 USC § 2615(a)(2).  This provision is

violated only where the employer takes some discriminatory action in response to an employee

who opposes a practice made unlawful by the FMLA.  *Bachelder v. Am. West Airlines, Inc.*, 259

F3d 1112, 1124 (9th Cir 2001).  This provision "[does] not cover visiting negative consequences

on an employee simply because he has used FMLA leave."  *Id*.  When this occurs, the employee's

only remedy is an interference claim under 29 USC § 2615(a)(1).   Moreover, if an employee's

request for leave was wrongfully denied, or an employer has in some way acted to discourage an

employee from taking leave, then the employee has an interference claim and not a retaliation

---

[2]  This court agrees with defendants that the EEOC filing does not affect the relevant time periods at issue in this case. The plain language of the statute, coupled with the fact that it has no exhaustion requirement, shows that Congress did not intend for the EEOC filing to toll the statute of limitations for FMLA claims.  *See Shannon v. City of Philadelphia*, 1999 WL 126097, *4 n4 (ED Pa March 5, 1999) (finding that filing a discrimination charge with the EEOC does not toll the statute of limitations under FMLA).

claim.  *Id*; 29 CFR § 825.220.  Thus, the facts do not support a retaliation claim under FMLA and summary judgment is granted on Count 2 of the Third Claim.

Whether the facts are sufficient to state an interference claim is a closer question.  An interference claim may be premised on activity by an employer "that tends to chill an employee's freedom to exercise his [] rights."  *Bachelder*, 259 F3d at 1123.  Some of Atwood's allegations have nothing to do with his taking of medical leave.  For example, it is apparent that the mid-December 2004 denial of leave is entirely unrelated to FMLA and, instead, involved a miscommunication about whether certain hours taken off by Atwood constituted paid working hours, or whether he was required to take some other form of non-FMLA leave in order to receive full pay.  Linder Aff., Exhibits 9-10.  Additionally, the letter of concern was unrelated to FMLA leave, but concerned the proper coding of a doctor's appointment that had been scheduled by SAIF attendant to a workers compensation claim.  Atwood Depo., pp. 66-73.

Much closer are Atwood's allegations that his medical leave paperwork was continuously misplaced throughout 2004 and 2005.  Atwood Decl., ¶ 20; Linder Decl., Ex. 13.  Additionally, according to Atwood, in late 2004 O'Connor expressed disapproval of taking so much FMLA leave.  Upon beginning work at ODOT's Warrenton location in August 2004, O'Connor said he would be the judge of whether Atwood needed leave, and added that "you and your shop steward bullshit will stop here," and "I will not put up with you guys shit [*sic*]." Atwood Depo., pp. 52-53.  Atwood took this to be in reference to his FMLA leave requests and his requests for accommodations.  Also, on one occasion, O'Connor allegedly yelled at Atwood for having to take FMLA leave to attend a doctor's meeting and instructed him to schedule his doctor's appointments after work.  Atwood Depo., pp. 53-54.  Atwood was ultimately permitted to go to

the scheduled doctor's appointment.  Apparently, ODOT management's treatment of Atwood was bad enough that his coworkers signed a petition demanding that the intimidation of Atwood with respect to FMLA and sick leave issues stop.  Linder Decl., Ex. 20.

Taken in the light most favorable to Atwood, these allegations are sufficient for a reasonable jury to find that ODOT interfered with Atwood's FMLA rights.  While it is true that Atwood has not demonstrated that he was ever denied a specific leave request during the relevant three year period, the FMLA protects employees against more than outright denials of claim or adverse employment actions.  Rather, it extends to protect employees against actions which discourage employees from exercising FMLA leave.  *See, e.g.*, *Traxler v. Multnomah County*, 2008 WL 282272, *16 (D Or Jan. 29, 2008) (plaintiff submitted sufficient evidence to create a factual issue that the County interfered with FMLA rights by complaining about the amount of FMLA leave used, expressing concern about the amount of time she had missed work, and complaining that the plaintiff dropped the ball while out on FMLA leave).

Atwood has presented sufficient evidence to create a material fact that ODOT managers engaged in conduct which violated his FMLA rights.  Although admittedly aware of Atwood's entitlement to FMLA leave, the evidence shows that there may have been significant opposition to his exercising of these rights by managers O'Connor, See, and others.

Thus, ODOT's motion for summary judgment is granted as to Count 2 (retaliation claim) and denied as to Count 1 (interference claim) of the Third Claim.

///

///

///

17 - OPINION AND ORDER

///

## IV.   **ADA Violation (Fourth Claim)**

ODOT seeks partial summary judgment against damages for violation of the ADA based on sovereign immunity.  Atwood concedes this motion.  Thus, ODOT is granted summary judgment against damages sought by Atwood for violation of the ADA.

## V.   **Proper Party Defendant (Fifth through Eighth Claims)**

Because the First Amended Complaint does not specify the defendant on the Fifth through Eighth Claims for violation of state law, ODOT seeks to clarify that, pursuant to ORS 30.265(a), it is the only proper defendant.  Atwood concedes that ODOT is the only proper defendant on the state statutory claims, but contends that he can still maintain his intentional infliction of emotional distress ("IIED") and reckless infliction of emotional distress ("RIED") claims against Spaeth and See for damages exceeding the OTCA cap, citing *Clarke v. Oregon Health Sciences Univ.*, 343 Or 581, 175 P3d 418 (2007).

In *Clarke*, the plaintiff sued OHSU and several individual defendants for medical malpractice and sought over $12 million in economic damages and $5 million in non-economic damages.  Pursuant to ORS 30.265(1), OHSU was substituted as the sole defendant.  OHSU then admitted that it was negligent and had caused permanent injury to plaintiff, resulting in damages in excess of the monetary limitations of the OTCA.  The court granted judgment on the pleadings against OHSU for $200,000, the maximum liability under ORS 30.270(a).  The plaintiff contended that he was denied the right to a  remedy in violation of Article I, Section 10, of the Oregon Constitution because the limited recovery against OHSU was not an adequate substitute remedy.

18 - OPINION AND ORDER

The Oregon Supreme Court reaffirmed that the Oregon legislature has the power "to vary and modify both the form and the measure of recovery for an injury, as long as it does not leave the injured party with an 'emasuclated' version of the remedy that was available at common law." *Id* at 606, 175 P3d at 432. Thus, the court looked to the injury to determine if the proposed substituted remedy would emasculate the remedy available to the plaintiff at common law. Given the plaintiff's high admitted damages and the low statutory cap, the Oregon Supreme Court found that elimination of a claim against the individual defendants violated the Remedy Clause of Article I, Section 10. However, *Clarke* was clear that its decision was confined to an "as applied" challenge for "permanent and severe injury caused by medical negligence." *Id* at 610, 175 P3d at 434. It did not hold that the substitution of the state for individually named defendants was unconstitutional absent evidence that the substituted remedy against the state is an emasculated version of the common law remedy.

On both the IIED and RIED claims, the First Amended Complaint alleges that Atwood suffered $2,000 in economic damages and $100,000 in non-economic damages. These damages are disputed, but even if admitted, Atwood's remedy is not emasculated by the OTCA damage caps. If the OTCA caps applied, Atwood would still recover the full amount of his alleged damages. As a result, ODOT is the only proper defendant on the IIED and RIED claims.

///

///

///

///

///

**VI.**   **State Statutory Discrimination (Fifth Claim)**

**A.**   **OTCA Notice**

ODOT seeks partial summary judgment against Counts 1-4 and 8 of the Fifth Claim

alleging disability discrimination for liability as to acts occurring prior to December 16, 2004.

First, ODOT asserts, and Atwood agrees, that these claims may only be brought pursuant to the

Oregon Tort Claims Act ("OTCA"), ORS 30.260-.300.

As a consequence, Atwood's state statutory claims are subject to the notice provisions of

ORS 30.275.  ORS 659A.875(5).  Notice may be made through formal notice, actual notice, or

commencement of an action, and must be given "within 180 days after the alleged loss or injury."

ORS 30.275(2)(b), (3).  "'The requirement that notice be given timely is a substantive condition

precedent to recovery under the [OTCA] that, if not satisfied, deprives a plaintiff of the right to

make a claim.'"  *Orr v. City of Eugene*, 151 Or App 541, 543, 950 P2d 397, 398 (1997), quoting

*Tyree v. Tyree*, 116 Or App 317, 320, 840 P2d 1378 (1992).

Atwood provided formal notice of his claims to ODOT on June 13, 2005.  Reeves Aff.,

Ex. 11.  Therefore, ODOT contends that Counts 1-4 and 8 are limited to allegations of unlawful

employment practices occurring on or after December 16, 2004, and cannot be premised on any

allegations of unlawful employment practices prior to that date.

Atwood does not dispute the applicability of the notice provision of the OTCA.  Instead,

he argues that, in addition to the formal notice he provided to ODOT on June 13, 2005, he also

gave ODOT actual notice of his claims in December 2003 when he left a voice mail message for

Newman threatening a lawsuit over her denial of his requested FMLA leave.  *See id*, Exs. 6 & 7.

At a minimum, Atwood argues, this message is sufficient to create an issue of fact as to whether

actual notice was given.  Alternatively, Atwood argues that evidence of the earlier violations is admissible under the continuing tort theory, in which case "a notice of claim filed at any time during the continuance of the conduct or within 180 days after the conduct has ceased is timely." *Barns v. City of Eugene*, 183 Or App 471, 475, 52 P3d 1094, 1096 (2002), citing *Holdner v. Columbia County*, 51 Or App 605, 613, 627 P2d 4, 9 (1981).

Atwood's claim that his message to Newman constituted actual notice is unfounded. Actual notice under the OTCA is defined as "any communication" by which certain designated persons acquire "actual knowledge of the time, place and circumstances giving rise to the claim, where the communication is such that a reasonable person would conclude that a particular person intends to assert a claim against the public body or an officer, employee or agent of the public body."  ORS 30.175(6).  This communication must be made to the office of the Director of the Oregon Department of Administrative Services or to any person responsible for administering tort claims on behalf of the public body.  ORS 30.175(5)-(6).

Nothing in the record indicates that Newman, who served as a Human Resource Analyst for ODOT, was responsible for administering tort claims on behalf of ODOT.  The only other ODOT official aware of Atwood's oral communication was See who served as Transportation Maintenance Manager for ODOT.  Nothing in the record indicates that See was responsible for administering tort claims on behalf of ODOT.  No evidence shows that these individuals were given responsibility for investigating potential violations of the OFLA or, for that matter, any other state employment statutes.  *See Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F3d 432, 437 (9th Cir 1997) (under the OTCA, "[actual] notice must be provided to the person responsible for investigating tort claims brought against the agency"), citing *McCabe v. State*, 314

Or 605, 611-12, 841 P2d 635, 638 (1992).  Atwood has failed to raise an issue of fact that ODOT

had actual notice of his statutory claims in December 2003.

ODOT challenges Atwood's alternate reliance on the continuing tort theory for several

reasons.  First, it argues that Atwood's allegations constitute a series of discrete acts which cannot

constitute a continuing tort even though they may be connected in design or intent.  Next, it

argues that no relevant Oregon authority supports the use of the continuing tort theory in the

context of state employment law.

In Oregon, "[a] continuing tort is based on 'the concept that recovery is for the cumulative

effect of wrongful behavior, not for discrete elements of that conduct.'"  *Barrington v. Sandberg*,

164 Or App 292, 296, 991 P2d 1071, 1073 (1999), quoting *Davis v. Bostick*, 282 Or 667, 671-72,

580 P2d 544, 547 (1978).  This theory is not available for discrete acts, which are separately

actionable, even though they are connected by the same design or intent.  *Davis*, 282 Or at 672-

73, 580 P2d at 547-48.  In other words, where the evidence shows that the plaintiff suffered

actionable harm by each act in a series of events, she is not "entitled to ride out the storm and

lump sum her grievances."  *Id* at 674, 580 P2d at 548.  To grant such a broad scope to the doctrine

would be to defeat the policy behind statutes of limitations which is "to put at legal rest old

claims."  *Id*.  In *Davis* the Oregon Supreme Court cautioned that "[d]esignating a series of

discrete acts, even if connected in design or intent, a 'continuing tort' ought not to be a rationale

by which the statute of limitations policy can be avoided."  *Id*.

This policy rational applies equally to claims brought under the OTCA.  *See Barrington*,

164 Or App at 302-03, 991 P2d at 1077 (Edmonds, P.J., *concurring*).  As Oregon courts have

pointed out on numerous occasions, the purpose of the OTCA notice provisions is "to permit a

22 - OPINION AND ORDER

reasonable investigation of the operative facts relied on for the claim." *Id*, citing *Urban Renewal Agency v. Lackey*, 275 Or 35, 41, 549 P2d 657, 660 (1976). Nevertheless, Oregon courts have approved of the use of the continuing tort theory in the context of employment discrimination cases. *See Griffin v. Tri-County Met. Transp.,* 112 Or App 575, 831 P2d 42 (1992), *rev'd in part on other grounds*, 318 Or 500, 870 P2d 808 (1994). Despite some indication that the Oregon Supreme Court did not agree with the Court of Appeal's application of the doctrine to the particular facts at issue in *Griffin*, it did not hold that the use of the doctrine in the employment context was inappropriate. *See Barrington*, 164 Or App at 303-05, 991 P2d at 1077-78 (Edmonds, P.J., *concurring*) (discussing differences in determination of date cause of action accrued made by the Oregon Supreme Court an Court of Appeals in *Griffin*).

In *Griffin*, the plaintiff brought suit against Tri-Met for discrimination on account of physical impairment in violation of ORS 659.425(1) (now found in amended form at ORS 659A.112). Before trial, the defendant moved to strike eight of the plaintiff's allegations because the facts involved occurred more than 180 days prior to the date the plaintiff provided his OTCA notice. The court found that five of these allegations occurred within the 180-day period and, therefore, were properly before the jury. However, the three allegations which occurred outside of the 180-day notice period were "not the type of discrete, permanent events that would likely support separate actions for wrongful discrimination." *Griffin*, 112 Or App at 582, 831 P2d at 46. Rather they could "be reasonably construed as elements of a systematic pattern of conduct, aimed at causing plaintiff's termination." *Id*.

*Griffin* demonstrates that Oregon applies the continuing tort doctrine to claims of employment discrimination. Moreover, "Oregon courts have consistently held that the case law

developed in federal courts in the interpretation of Title VII can be used to interpret Chapter [659A] of the Oregon Revised Statutes because the statutory schemes are similar and Chapter [659A] is patterned after Title VII." *Conley v. City of Lincoln City*, 2004 WL 948427, *13 (D Or April 20, 2004) (citing cases).  The same applies to claims of disability discrimination since Oregon's law is modeled on the ADA and is interpreted consistently with it.  *Hutton v. Elf Atochem N. Am., Inc.*,  273 F3d 884, 891 n1 (9th Cir 2001).  Thus, federal law developed in the context of Title VII or the ADA applies to this case.  *See Douglas v. Cal. Dept. of Youth Auth.*, 271 F3d 812, 821-22 (9th Cir 2001) (ADA), *cert denied*, 536 US 924 (2002).  Indeed, the continuing violation doctrine under federal law appears perfectly congruous with the lines drawn between continuous torts and separate discrete acts under Oregon law.

In light of these rules, Count 3 alleging a hostile work environment discrimination due to disability is not limited to acts occurring after December 16, 2004.  Indeed, a hostile work environment claim seems to be exactly the kind of claim which "recovery is for the cumulative effect of wrongful behavior."  *Bostick*, 282 Or at 671-72, 580 P2d at 547.  However, as held in *Morgan*, the facts may only be offered in support of this theory to the extent that they "are part of the same unlawful employment practice," that is, discriminatory actions taken because of the fact that Atwood was disabled.  *Morgan*, 536 US at 122; *cf. Wheeler v. Marathon Printing, Inc.*, 157 Or App 290, 302-03, 974 P2d 207, 214 (1998).  If the evidence does not support the inference that the action was taken for that purpose, then it is not admissible to support this claim.

These same rules dictate that Counts 1, 2, 4 and 8 must be limited to unlawful employment practices occurring after December 16, 2004.  Counts 1 and 2 allege that Atwood requested reasonable accommodation in light of his disability and that ODOT failed to grant such

accommodations or engage him in the interactive process.  First Amended Complaint, ¶¶ 79-80.

Instead, according to Count 2, ODOT retaliated against Atwood in various ways.  *Id*, ¶ 84.  A

refusal to grant reasonable accommodations in response to a request would have been a discrete

actionable injury under ORS 659A.112.  Similarly, each act of retaliation would have been

separately actionable as a discrete instance of discrimination.  Therefore, ODOT may not be held

liable for any such retaliatory actions taken outside of the 180-day notice period.  However, any

retaliatory acts that occurred on or after December 16, 2004, are actionable.  Finally, for the same

reasons, Atwood may not rely on any discriminatory act that occurred prior to December 16, 2004

in violation of ORS 659A.040 as alleged in Count 8.[3]

## B.   **BOLI Complaint**

Alternatively, pursuant to ORS 659A.820(1), ODOT seeks partial summary judgment

against Counts 1-4 and 8 alleging disability discrimination for liability as to acts occurring prior

to August 1, 2004, based on Atwood's filing of a BOLI complaint.  Based on the above

discussion of the OTCA notice, this alternative argument is moot as to Counts 1, 2, 4 and 8.  As to

Count 3, ODOT's motion is denied on the grounds of the continuing tort doctrine.

///

///

///

///

///

## VII.   **Intentional Infliction of Emotional Distress (Sixth Claim)**

---

[3] The record does not reflect when Atwood applied for or received workers compensation benefits.  If the date was before December 16, 2004, then Count 8 must be dismissed.

A.    **Sufficiency of Evidence**

ODOT seeks summary judgment against Atwood's IIED claim because the conduct at

issue was not an extraordinary transgression of the bounds of socially tolerable conduct under

Oregon law.

To prove an IIED claim, Oregon law requires the plaintiff to prove three elements:

> (1) that [the] defendant[] intended to cause plaintiff severe emotional
> distress or knew with substantial certainty that their conduct would cause
> such distress; (2) that [the] defendant[] engaged in outrageous conduct- *i.e.*,
> conduct extraordinarily beyond the bounds of socially tolerable behavior;
> and (3) that [the] defendant['s] conduct in fact caused plaintiff severe
> emotional distress.

*Checkley v. Boyd*, 198 Or App 110, 124, 107 P3d 651, 660 (2005), citing *McGanty v.*

*Staudenraus*, 321 Or 532, 543-50, 901 P2d 841, 849-52 (1995).

At the core of every IIED claim is the requirement that the behavior engaged in be

"outrageous in the extreme."  *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 112 Or App 234, 239, 828

P2d 479, 481 (1992).  It is axiomatic that "[c]onduct that is merely rude, boorish, tyrannical,

churlish and mean does not satisfy that standard, nor do insults, harsh or intimidating words, or

rude behavior ordinarily result in liability even when intended to cause distress."  *Id* (internal

citations, quotations, and ellipsis omitted); *see also*, *Christofferson v. Church of Scientology of*

*Portland*, 57 Or App 203, 212-13, 644 P2d 577, 585 (1982) ("It is only by proof of conduct that is

'beyond the limits of social toleration' that plaintiff may recover in an action for outrageous

conduct, no matter what defendants may have intended and no matter what the effect on plaintiff

may have been."), *review denied*, 293 Or 456 (1982), *cert denied*, 459 US 1206, 1227 (1983).

Whether conduct is outrageous in the extreme "is a fact specific inquiry" to be analyzed

"on a case-by-case basis, considering the totality of the circumstances involved, to determine

whether it constitutes an extraordinary transgression of the bounds of socially tolerable conduct." *Buckel v. Nunn*, 133 Or App 399, 404, 891 P2d 16, 20 (1995) (citation and internal quotations omitted). However, initially "[i]t is a question of law whether, viewing the evidence in the light most favorable to plaintiff, defendants' conduct constitutes 'extraordinary conduct which a reasonable jury could find beyond the farthest reaches of socially tolerable behavior.'" *Tenold v. Weyerhaeuser Co.*, 127 Or App 511, 517, 873 P2d 413, 417 (1994), *review dismissed*, 321 Or 561, 901 P2d 859 (1995), quoting *Hall v. The May Dep't Stores*, 292 Or 131, 137, 637 P2d 126, 130 (1981), *overruling on other grounds recognized by Patrick ex rel. Estate of Patrick v. State*, 178 Or App 97, 36 P3d 976 (2001). Therefore, summary judgment is appropriate on this issue only if no material issue of fact would permit a jury to find that the defendant's conduct was outrageous in the extreme.

Atwood has submitted sufficient evidence to survive summary judgment on the issue of outrageousness.[4]  Simply discharging an employee does not constitute outrageous behavior. *Mandani v. Kendal Ford Inc.*, 312 Or 198, 204, 818 P2d 930, 934 (1991), *abrogated on other grounds*, *McGanty*, 321 Or at 544, 779 P2d at 1010.  However, the alleged actions towards Atwood went beyond a simple termination of employment.  Taken in the light most favorable to Atwood, the facts show that Spaeth and See engaged in a systematic process of harassment, abuse and discrimination against him that extended over multiple years.  The more egregious behavior includes See denying him leave when he saw Atwood crawling across the parking lot due to the pain of his undiagnosed disease; See shredding medical leave documents in front of Atwood; the passing out of brochures for Hepatitis C at a work meeting; Spaeth harassing Atwood on several

---

[4]As discussed below, Atwood can rely on all of the alleged actions during the course of his employment under a continuing violation theory.

occasions when he requested union representation, including throwing his "Weingarten card" at him; See and Larkins forcing him to work extra hours when he was suffering from the symptoms of his disease and needed to go home to take medication; and Spaeth threatening Atwood, but not other employees, with termination if he would not make himself available for work outside of ordinary working hours. While no one of these actions may be sufficiently outrageous to support an IIED claim, a jury could find the cumulative effect to be outrageous.

### B.      Statute of Limitations

ODOT also contends that Atwood cannot premise his IIED claim on events that occurred prior to October 27, 2004. The IIED claim is a tort claim subject to the OTCA two year statute of limitations in ORS 30.275(9). Since Atwood filed suit on October 27, 2006, in state court against ODOT on his IIED claim,[5] ODOT claims that the two year statute of limitations bars events prior to October 27, 2004.

Once again, Atwood relies on a continuing violation theory to contend that facts prior to October 27, 2004, are not time barred. Unlike the alleged violation of equal protection based on discrete discriminatory acts discussed above, Atwood's IIED claim relies on repeated conduct over a period of time beginning in 2001 and continuing in various forms through to the present. In that respect, it is similar to a hostile environment claim. As a result, it is not subject to the same time constraints, and evidence of those events prior to October 27, 2004, may be considered for liability purposes.

Accordingly, ODOT is not entitled to summary judgment against the IIED claim.

## VIII.  Reckless Infliction of Emotional Distress (Seventh Claim)

---

[5] The record contains no reference to Atwood filing suit in state court against ODOT on October 27, 2006. However, Atwood has not contested the filing of such a lawsuit. Therefore, for purposes of this motion, this court assumes that he did so.

ODOT seeks summary judgment against the REID claim because it is not cognizable as a cause of action in Oregon when based on an employee-employer relationship.  For the reasons stated in *Perez v. Nike, Inc.*, 2008 WL 282271 (D Or  Jan. 31, 2008), this court agrees.  *See also Snead v. Metro. Prop.,* 909 F Supp 775, 779 (D Or 1996).  A special relationship does not exist between an employer and employee sufficient to establish a RIED claim.  Thus, ODOT is granted summary judgment against the Seventh Claim.

**IX.     Violation of OFLA (Eighth Claim)**

ODOT seeks summary judgment against the Eighth Claim alleging violations of OFLA for the same reasons argued with respect to the Fifth Claim alleging violations of various state statutory provisions.  For the same reasons as discussed above, the OFLA claim does benefit from the continuing tort doctrine.  Thus, ORS 30.275 limits the Eighth Claim to violations occurring on or after December 16, 2004.

///

///

///

///

///

///

**ORDER**

For the reasons set forth above, defendants' Partial Motion for Summary Judgment (docket # 36) is GRANTED as to the following claims:

First Claim (§ 1983):

Count 1 as to defendant See and as to allegations against defendant Spaeth for retaliation and hostile work environment based on religion;

Count 2; and

Count 3;

Second Claim (Title VII): Count 3 (hostile work environment due to religion);

Third Claim (FMLA): Count 2 (retaliation);

Fourth Claim (ADA) as to damages only;

Fifth Claim (state statutory claims): Counts 1, 2 , 4 and 8 as to alleged violations prior to December 16, 2004;

Sixth Claim (IIED) as to defendants Spaeth and See;

Seventh Claim (REID);

Eighth Claim (OFLA) as to alleged violations prior to December 16, 2004;

and is otherwise DENIED.

DATED this 20th day of March, 2008.

/s/ Janice M.  Stewart_____
Janice M. Stewart
United States Magistrate Judge